**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT BATES,** | ) | **Case No. 1:14CV399** |
| | ) | |
| **Petitioner,** | ) | **JUDGE BENITA Y. PEARSON** |
| | ) | |
| **v.** | ) | **Magistrate Judge George J. Limbert** |
| | ) | |
| **ALAN J. LAZAROFF[1], Warden,** | ) | |
| **MANSFIELD CORRECTIONAL** | ) | **REPORT AND RECOMMENDATION** |
| **INSTITUTION,** | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| **Respondent.** | ) | |

Petitioner Robert Bates ("Petitioner") has filed a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional
violations that occurred during his Cuyahoga County, Ohio Court of Common Pleas convictions
in four separate cases for six counts of robbery, three of which included 3-year firearm
specifications and three which included 1-year firearm specifications.  *Id*.  On August 1, 2014,
Respondent Alan J. Lazaroff, Warden of the Mansfield Correctional Institution ("Respondent")
filed an answer/return of writ.  ECF Dkt. #7.  On November 7, 2014, Petitioner filed a traverse.
ECF Dkt. #9.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the
petition in its entirety with prejudice:

**I.**     **PROCEDURAL HISTORY**

**A.**     **State Trial Court**

In its May 2010 term, the Cuyahoga County Ohio Grand Jury indicted Petitioner in four
separate cases.  In Case Number CR-539120, Plaintiff was indicted on charges of:  aggravated
robbery in violation of Ohio Revised Code ("ORC") § 2911.01(A)(1) with a one-year firearm
specification and a three-year firearm specification; kidnapping in violation of ORC §
2905.01(A)(2) with one-year and three-year firearm specifications; and disrupting public

---

[1]     Respondent points out that Alan J. Lazaroff is the Warden of Manfield Correctional Institution and requests
that the case caption in this case be modified to reflect Mr. Lazaroff as the Respondent.  The undersigned recommends
that the Court grant this Request.  ECF Dkt. #7 at 1, fn. 1.

services in violation of ORC § 2909.04(A)(1).  ECF Dkt. #7-6.  In Case Number CR-539142, Petitioner was indicted on:  five counts of aggravated robbery in violation of ORC § 2911.01(A)(1) with one and three-year firearm specifications; aggravated burglary in violation of ORC § 2911.11(A)(2) with one and three-year firearm specifications; three counts of kidnapping in violation of ORC § 2905.01(A)(2) and (B)(2) with one and three-year firearm specifications; three counts of having weapons under disability in violation of ORC § 2923.13(A)(3); three counts of theft in violation of ORC § 2913.02(A)(1); and aggravated menacing in violation of ORC § 2903.21(A); .  ECF Dkt. #7-7.  In Case Number CR-539321, Petitioner was indicted on: two counts of kidnapping in violation of ORC § 2905.01(A)(2) and (B)(2), each with one and three-year firearm specifications; aggravated robbery in violation of ORC § 2911.01(A)(1) with one and three-year firearm specifications;  carrying a concealed weapon in violation of ORC § 2923.12(A)(2); and having weapons while under disability in violation of ORC 2923.13(A)(2). ECF Dkt. #7-8.  In Case Number CR-540937, the Cuyahoga County Grand Jury indicted Petitioner on: aggravated robbery in violation of ORC § 2911.01(A)(1), with one and three-year firearm specifications; kidnapping in violation of ORC § 2905.01(A)(2), with one and three-year firearm specifications; and having weapons under disability in violation of ORC § 2923.13(A)(3).  ECF Dkt. #7-9.

On October 17, 2011, Petitioner entered guilty pleas in all of his cases to a total of six counts of robbery with various firearm specifications.  Specifically, Petitioner entered guilty pleas to one count of robbery with a three-year firearm specification in Case Number CR-539120;  two counts of robbery in Case Number CR-539142 with three-year firearm specifications and one count of robbery with a one-year firearm specification; one count of robbery with a one-year firearm specification in Case Number CR-539321; and one count of robbery with a one-year firearm specification in Case Number CR-540937.  ECF Dkt. #7-10.

On November 22, 2011, at his sentencing, Petitioner, through counsel, orally moved the court to vacate his guilty pleas.  ECF Dkt. #7-11.  The trial court denied the motion, finding that Petitioner made a knowing, intelligent and voluntary plea to the charges after being fully advised of his rights and the potential consequences of pleading guilty, with both Petitioner's counsel

-2-

and the prosecutor affirming that the court fully complied with Rule 11 of the Ohio Rules of Criminal Procedure ("Criminal Rule 11").  ECF Dkt. #7-11.  On the same date, the trial court sentenced Petitioner to a total of forty-nine years in prison on his convictions.  ECF Dkt. #7-12.

### B.    Direct Appeal

On December 2, 2011, Petitioner, through counsel, filed timely notices of appeal to the Ohio Court of Appeals for the Eighth District.  ECF Dkt. #7-14.  In his appellate brief, Petitioner, through counsel, asserted the following assignments of error:

> ASSIGNMENT OF ERROR I:
>
> THE TRIAL COURT FAILED TO COMPLY WITH CRIMINAL RULE 11 BY NOT ADVISING APPELLANT OF THE MAXIMUM PENALTIES APPELLANT WOULD BE SUBJECTED TO UPON ENTERING GUILTY PLEAS. (TR. 44-48).
>
> ASSIGNMENT OF ERROR II:
>
> THE COURT ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA.  (TR. 59).

ECF Dkt. #7-16 at 4.  The State filed an appellate brief.  ECF Dkt. #7-17.

On August 30, 2012, the Eighth District Court of Appeals issued an opinion affirming the trial court's judgment.  ECF Dkt. #7-18.

### C.    Supreme Court of Ohio

On October 5, 2012, Petitioner, pro se, filed a notice of appeal in the Supreme Court of Ohio.  ECF Dkt. #7-20.  In his memorandum in support of jurisdiction, Petitioner asserted the following propositions of law:

> **Proposition of Law No. 1:**
>
> THE TRIAL COURT FAILED TO COMPLY WITH CRIMINAL RULE 11 BY NOT ADVISING APPELLANT OF THE MAXIMUM PENALTIES APPELLANT WOULD BE SUBJECTED TO UPON ENTERING GUILTY PLEAS. (TR. 44-48).
>
> **Proposition of Law No. 2**:
>
> THE [sic] ERRED IN DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA. (TR. 59).

ECF Dkt. #7-21.

On February 6, 2013, the Ohio Supreme Court declined to accept jurisdiction of

Petitioner's appeal.  ECF Dkt. #7-22.

### D.     Motion to Void Judgment

On November 13, 2012, Petitioner filed a pro se motion to void judgment in the Cuyahoga County Court of Common Pleas.  ECF Dkt. #7-23.  Petitioner asserted that the photo array used to identify him was illegal.  *Id.*

On November 15, 2012, the trial court denied Petitioner's motion, holding that res judicata barred Petitioner's claim as he could have raised it on direct appeal but did not.  ECF Dkt. #7-24.

### E.     Rule 60(B) of Ohio Rules of Civil Procedure

On July 15, 2013, Petitioner filed a pro se motion for relief from judgment pursuant to Rule 60(B) of the Ohio Rules of Civil Procedure.  ECF Dkt. #7-25.  Petitioner asserted that because no rule of criminal procedure provided for a trial court to reconsider its judgment, Rule 57 of the Ohio Rules of Criminal Procedure allowed a defendant to resort to the Ohio Rules of Civil Procedure if no criminal procedural rule existed.  *Id.* at 1.  Petitioner argued that appellate counsel was ineffective for failing to raise the issue regarding the tainted and suggestive photo arrays,  *Id.* at 2-9.  He further asserted that the trial court erred in admitting the allegedly tainted and suggestive photo identifications into evidence.  *Id.* at 9-11.  Petitioner also contended that his trial counsel was ineffective because Petitioner has a sixth grade education and his counsel failed to explain the meanings of consecutive and concurrent terms and his counsel had led him to believe that if he pled guilty, he would receive a twelve-year sentence.  *Id.* at 11.

On July 17, 2013, the trial court denied Petitioner's motion, applying res judicata to bar those claims since Petitioner could have raised them on direct appeal .  ECF Dkt. #7-26.

### F.     Motion for Resentencing

On March 10, 2014, Petitioner pro se filed a motion for resentencing in the trial court.  ECF Dkt. #7-27.  Petitioner asserted that he should be resentenced because the trial court failed to comply with Ohio Revised Code § 2945.05 and Rule 23 of the Ohio Rules of Criminal Procedure.  *Id.*

On March 13, 2014, the trial court denied Petitioner's motion, finding that res judicata barred his claim as he could have raised it on direct appeal but did not.  ECF Dkt. #7-28.

## II.  28 U.S.C. § 2254 PETITION

On January 28, 2014, Petitioner pro se executed the instant petition for a writ of federal habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

> GROUND ONE:
>
> THE STATE OF OHIO VIOLATED DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENT[sic] TO THE U.S. CONSTITUTION WHEN IT FAILED TO ADVISE PETITIONER OF THE MAXIMUM PENALTIES PETITIONER WOULD BE SUBJECTED TO UPON ENTERING GUILTY PLEA.
>
> GROUND TWO:
>
> THE STATE OF OHIO VIOLATED PETITIONER'S 5TH AND 14TH AMENDMENTS GUARANTEED UNDER THE DUE PROCESS CLAUSE TO THE UNITED STATES CONSTITUTION BY DENYING PETITIONER'S MOTION TO WITHDRAW HIS GUILTY PLEA.  PETITIONER WAS UNINFORMED ON SEVERAL CRITICAL ISSUES IN HIS CASE THEREBY CAUSING PETITIONER TO AGREE TO A PLEA DEAL THAT WAS NOT KNOWINGLY AND INTELLIGENTLY MADE.

*Id*. at 5-6.  On August 1, 2014, Respondent filed an answer/return of writ.  ECF Dkt. #7. On November 7, 2014, Petitioner filed a traverse.  ECF Dkt. #9.

## III.  PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

-5-

**B.**     **Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Further, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted.  *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

**C.**     **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement.

-6-

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730. For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed). When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991). In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735. Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).

## IV.     STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

-7-

> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented
> in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the

language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by this Court
> on a question of law or if the state court decides a case differently than this
> Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the writ
> if the state court identifies the correct governing legal principle from this
> Court's decisions but unreasonably applies that principle to the facts of the
> prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that

"a federal habeas court making the 'unreasonable application' inquiry should ask whether the

state court's application of clearly established federal law was objectively unreasonable."  *Id.*

Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court

may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable."  *Id.*; *see also Bailey v. Mitchell,* 271 F.3d

652, 655-56 (6th Cir. 2001).

 The Sixth Circuit Court of Appeals offers the following guidelines for applying the

AEDPA limitations:

> A.    Decisions of lower federal courts may not be considered.
>
> B.    Only the holdings of the Supreme Court, rather than its dicta, may
> be considered.
>
> C.    The state court decision may be overturned only if:
>
>> 1.    It '[applies] a rule that contradicts the governing law set
>> forth in [Supreme Court of the United States] cases,' [the
>> Supreme Court precedent must exist at the time of
>> petitioner's direct appeal] or;
>>
>> 2.    the state-court decision 'confronts a set of facts that are
>> materially indistinguishable from a decision of [the Supreme
>> Court] and nevertheless arrives at a result different from

-8-

                    [Supreme Court] precedent;' or

        3.      'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.      the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

      D.      Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

      E.      Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted). Finally, a reviewing federal court is bound by the presumption of correctness set forth in 28 U.S.C. § 2254(e), which provides:

      (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik,* 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension*

-9-

*Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V.     LAW AND ANALYSIS

### A.     Ground for Relief Number One

In his first ground for relief, Petitioner asserts that the trial court violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution when it failed to inform him of the maximum penalties that he would be subjected to upon the entering of his guilty pleas. ECF Dkt. #1 at 5. The undersigned recommends that the Court find that no due process violations occurred during Petitioner's plea colloquy and the state appellate court's determination of this issue was not contrary to or an unreasonable application of United States Supreme Court precedent.

The undersigned notes that a state court's failure to follow its own rules regarding guilty plea colloquies is not cognizable unless that failure constitutes a violation of due process. *Smith v. Anderson*, 632 F.3d 277, 281 (6th Cir. 2011), citing *Ramos v. Rogers*, 170 F.3d 560, 564 n. 2 (6th Cir.1999)("Since this is an appeal of the denial of a habeas petition, we are not permitted to review whether the plea colloquy conformed with the strictures of Ohio Rule 11, but only whether it comported with the requirements of constitutional due process." (citing *Norris v. Schotten,* 146 F.3d 314, 328 (6th Cir.1998))); *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir.1995) ("Reviewing federal courts may set aside a state court guilty plea only for failure to satisfy due process." (internal quotation marks omitted)). Thus, a review of the Rule 11 plea colloquy is necessary to determine whether due process requirements were met.

In order "[f]or a plea to be knowing and voluntary, a defendant must be aware of the consequences of his plea, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel." *Marks v. Davis*, 504 Fed. App'x 383, 385, No. 10-2216 (6th Cir. Nov. 2, 2012), unpublished, citing *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (quotation omitted). The Supreme Court of the United States has

-10-

held that a defendant must have "sufficient awareness of the relevant circumstances and likely consequences" of his plea. *Brady*, 397 U.S. at 748. A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004, quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). A plea may be involuntary if the defendant does not understand the nature of the constitutional protections that he is waiving and may be unintelligent if the defendant does not understand the charge against him. *Henderson v. Morgan*, 426 U.S. 637, 645, n.13, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976). The government can show that the plea was made intelligently and voluntarily by producing a transcript of the state court proceedings. *McAdoo*, 365 F.3d at 494, citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir.1993).

Respondent has attached a copy of the transcript of the plea colloquy in this case. ECF Dkt. #7-13. The plea colloquy indicates that on the date of trial, Petitioner expressed his desired to plead guilty. *Id.* at 37. The trial court noted that Petitioner had begun a plea colloquy the week prior and wished to renew that plea colloquy. *Id.* Petitioner's counsel indicated on the record that he had extensive discussions with Petitioner and Petitioner desired to enter guilty pleas. *Id.* The court thereafter requested that the prosecutor put the plea agreements back on the record as changes had been made since the prior unfinished plea colloquy. *Id.* The prosecutor identified all of the case numbers involved in the pleas and related the charges in each case upon which Petitioner would be entering guilty pleas. *Id.* at 37-41. After announcing each charge in each case, the prosecutor indicated that the robbery charges to which Petitioner was pleading guilty were second degree felonies and he also identified the firearm specifications to which Petitioner was also pleading guilty. *Id.* He then summarized the penalties that Petitioner was facing upon pleading guilty:

> And just so the record is clear, in regards to all four of these cases, the gun specifications do not merge. They must be run consecutive to each other and prior to this Court sentencing Mr. Bates for any term of incarceration on the felony of the second degree robberies, so that means that Mr. Bates will be serving twelve years in firearm specifications prior to any term of incarceration on these six robberies, the felonies of the second degree.

*Id.* at 41.  While the emphasis of this summary was to reinforce that the sentences for the firearm specifications would run consecutively, the prosecutor also pointed out that the robbery charges to which Petitioner was pleading guilty were second degree felonies.  *Id*. at 37-41.

The court then asked Petitioner's counsel whether the prosecutor's statements reflected pretrial discussions that were had between the parties and defense counsel indicated that the statements were accurate.  ECF Dkt. #7-13 at 41.  The court asked defense counsel whether he had advised Petitioner of the plea offer and whether he had "gone over the mandatory time as well as the discretionary time in this case" and counsel responded that he had done so.  *Id.*

The court thereafter asked Petitioner his name, his age and his education.  ECF Dkt. #7-13 at 42.  Petitioner responded that he was 31 years old, had a sixth grade education, and could understand, read and write the English language.  *Id*.  Petitioner answered no when asked whether he was under the influence of alcohol or drugs of abuse, but responded that he had taken the prescription medications of Vistaril and Celexa.  *Id*. at 42-43.  The court asked if those medications impacted his ability to think clearly and Petitioner responded that they did not.  *Id*. at 43.  Petitioner also responded no when the court asked him whether he was threatened to plead guilty or made any promises other than those in the plea agreement to induce him into pleading guilty.  *Id.*  He also stated that he was "absolutely" satisfied with his counsel's representation.  *Id.*

The court then proceeded to review the charges again and indicated that it would do so slowly so that Petitioner could understand them.  ECF Dkt. #7-13 at 43-44.  The court began by indicating that "in all of these cases you'll be entering pleas of guilty to robbery, a felony of the second degree, and that's in violation of 2911.02(A)(2) of the Revised Code."  *Id*. at 44.  The court then identified the first case number, "539120," and explained that Petitioner would be pleading to a "felony two robbery with a 3-year firearm specification."  *Id.*  Petitioner indicated that he understood.  *Id.*  The court then explained that "[f]elony twos are punishable by between two and eight years in state prison and a fine of up to $15,000."  *Id.*  Petitioner indicated that he understood.  *Id.*  The court also informed Petitioner that the sentences could be run consecutively

-12-

if the court decided to do so after a presentence investigation report and statements made by Petitioner if he wished to make any at the sentencing.  *Id.* at 45.  The court identified the second case number, "539142," and explained that Petitioner would be pleading guilty to robbery, felonies of the second degree, in Counts 1, 8 and 12, with a 3-year, 3-year, and 1-year firearm specification, respectively.  *Id*. at 45-46.  The court identified case number "539321" and indicated that Petitioner would be pleading guilty to robbery, a felony of the second degree, and a 1-year firearm specification.  *Id.* at 46.  And then the court identified case number "540937" and indicated that Petitioner would be pleading guilty to a "felony 2 robbery with a 1-year firearm specification."  *Id*.  The court reiterated that Petitioner was facing 12 years of imprisonment on the firearm specifications alone.  *Id*.  Petitioner responded that he understood.  *Id*.  The court also informed Petitioner of a 3-year mandatory post-release control sentence and Petitioner responded that he understood.  *Id*. at 46-47.  The court further informed Petitioner that he was not eligible for community control because there was a mandatory prison sentence and Petitioner indicated that he understood.  *Id*. at 47.  Finally, the court went over each constitutional right that Petitioner would be waiving if he entered his guilty pleas and Petitioner responded that he understood those rights and that he would be waiving them if he entered guilty pleas.  *Id*. at 47-49.

The court then proceeded separately through each count of each case to inquire whether Petitioner was pleading guilty to each specified charge in each case.  ECF Dkt. #7-13 at 49-51. The court again informed Petitioner that each robbery charged was a felony of the second degree and outlined the firearm specifications that corresponded to each count to which he was pleading guilty.  *Id*.  Petitioner responded after each charge and penalty read by the court that he was pleading "guilty."  *Id.*  The court then asked the prosecutor and defense counsel whether it had fully complied with Rule 11 of the Ohio Rules of Criminal Procedure and each of them responded that the court had so complied.  *Id.* at 53.

Thus, the transcript reveals that both the prosecutor and the trial court informed Petitioner that he was facing twelve years total on the firearm specifications in addition to a range of 2-8 years each on the six robbery charges, with the sentences on the firearm specifications to run

consecutively to the robbery sentences.  While the trial court did not add those two numbers

together for Petitioner to inform him of the total combined maximum sentences, Petitioner points

to no law or constitutional requirement mandating that the court do so and the court nevertheless

provided Petitioner with the relevant information that he needed in order to consider whether he

still wanted to plead guilty.

On direct appeal, the state appellate court addressed Petitioner's claim that the trial court

failed to comply with Rule 11 of the Ohio Rules of Criminal Procedure when it failed to inform

him of the maximum penalties that he was facing upon entering guilty pleas:

> Bates filed a timely appeal in each case, and the cases have been consolidated for appellate review. He raises two assignments of error. His first assignment of error provides as follows: "The trial court failed to comply with Criminal Rule 11 by not advising appellant of the maximum penalties appellant would be subjected to upon entering guilty pleas."

> "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 1996–Ohio–179, 660 N.E.2d 450. Pursuant to Crim.R. 11(C)(2)(a), the court shall not accept a plea of guilty in a felony case without first addressing the defendant personally and determining that he is making the plea voluntarily and with understanding of the nature of the charges and of the maximum penalty involved. The standard for reviewing the nonconstitutional requirements of Crim.R. 11(C)(2)(a), which includes the maximum penalties, is substantial compliance. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), citing *State v. Stewart*, 51 Ohio St.2d 86, 92–93, 364 N.E.2d 1163 (1977). "A plea is in substantial compliance with Crim.R. 11 when it can be inferred from the totality of the circumstances that the defendant understands the charges against him." *State v. Walker*, 8th Dist. No. 65794, 1994 WL 530892 (Sept. 29, 1994). Furthermore, a defendant must show a prejudicial effect. *Stewart* at 93.

> Bates contends that the trial court failed to properly advise him of the maximum penalty involved. Specifically, Bates maintains that the trial court did not advise him of the maximum penalty he faced in each case or of the total aggregate sentence he faced. Bates further argues that the trial court failed to advise him of the mandatory time he was subject to on the firearm specifications. Our review of the plea transcript demonstrates that the trial court substantially complied with the mandates of Crim.R. 11 and that Bates entered a knowing, intelligent, and voluntary plea to the charges.

> At the plea hearing, the state set forth the plea agreement on the record before the court and Bates. The state set forth the charges, as amended, to which Bates agreed to plead guilty, with a request that the remaining charges be nolled. The prosecutor specifically stated as follows:

-14-

And just so the record is clear, in regards to all four of the cases, the gun specifications do not merge. They must be run consecutive to each other and prior to this Court sentencing Mr. Bates for any term of incarceration on the felony of the second degree robberies, so that means that Mr. Bates will be serving twelve years in firearm specifications prior to any term of incarceration on these six robberies, the felonies of the second degree.

Defense counsel indicated that he had advised Bates of the plea offer and gone over the mandatory time as well as the discretionary time in the case.

The court advised Bates that in all of the cases he would be entering pleas to robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2), and that only the gun specifications were different. The court further explained that "[f]elony twos are punishable by between two and eight years in state prison and a fine of up to $15,000" and that the sentences could be run consecutively. The court proceeded to review the prison terms associated with the gun specification on each of the counts to which Bates was pleading in all cases. After reviewing the one- and three-year firearm specifications in each case, the court stated, "that's 12 years of firearm specifications that I've given to you * * *." The court indicated that "there is mandatory time here" and also discussed nonmandatory time. Bates expressed his understanding of the court's advisements. The court proceeded to engage in a thorough Crim.R. 11 plea colloquy with Bates, who acknowledged his rights and understanding of the ramifications of the guilty plea.

While Bates claims that the trial court failed to associate the terms of the firearm specifications to the penalty faced for each charge, the record reflects that proper information was provided to Bates and that he had an understanding of the potential maximum penalties associated with his guilty plea. The state placed the plea arrangement on the record and indicated that the gun specifications, which totaled 12 years, were to be served prior and consecutive to the time imposed for the underlying robbery offenses. The court proceeded to inform Bates of the sentence range he faced for each of the robbery charges and that the sentences could run consecutive. The court also informed Bates of the firearm specification to each count and advised him that he would be given a total of 12 years of firearm specifications. Bates expressed his understanding that his sentence included mandatory and nonmandatory time, which defense counsel had gone over with Bates.

While some of the information was provided by the prosecutor, it has been recognized that a defendant may gain an understanding from sources other than the court and that a trial court's determination that a defendant understands the charges and the potential maximum penalties may be based on the totality of the circumstances. *State v. Sims*, 8th Dist. No. 95979, 2011–Ohio–4819, ¶ 33–34*; see also State v. Rainey*, 3 Ohio App.3d 441, 442, 446 N.E.2d 188 (10th Dist.1982). Here, the totality of the circumstances indicates that Bates understood the nature of the charges and the maximum penalty that could be imposed upon his guilty plea. Additionally, no prejudice has been shown by Bates.

Further, although the court did not explicitly inform Bates of the maximum aggregate sentence he could serve, the trial court's omission does not rise to the

-15-

> level of violating Crim.R. 11. Bates points to no language in Crim.R. 11 that requires the trial court to advise a defendant of the maximum aggregate sentence he could serve on the offenses. Rather, Crim.R. 11(C)(2)(a) requires that the trial court determine defendant's understanding of the nature of the charges and of the maximum penalty involved.
>
> Our review reflects that the trial court substantially complied with the requirements of Crim.R. 11 and that Bates entered his plea knowingly, intelligently, and voluntarily. Accordingly, we overrule the first assignment of error.

ECF Dkt. #7-18 at 4-8.

Based upon a review of the plea colloquy transcript and the Ohio appellate court's determination, the undersigned finds that no due process violations occurred and Petitioner was adequately informed of the constitutional rights that he was waiving and the maximum penalties that he was facing as a result of pleading guilty to the robbery charges and firearm specifications identified by the trial court and the prosecutor. Accordingly, the undersigned recommends that the Court find that no due process violation occurred when the trial court failed to specifically state the maximum penalty that he faced in each case or the total aggregate sentence that he faced.       In his traverse, Petitioner asserts that his sixth grade education and the psychotropic medications that he was taking rendered him incapable of understanding the plea and the penalties that he was facing by pleading guilty. ECF Dkt. #9 at 7-10. He contends that the court should have further investigated his taking of said medications and the affect that they had on his ability to voluntarily, intelligently and knowingly plea guilty. *Id.*

The voluntariness of a plea can be determined only by considering all of the relevant circumstances surrounding it. *Brady v. U.S.*, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his or her mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made with sufficient awareness of the relevant circumstances and likely consequences. *Id.* at 748. While a court should review the particular circumstances of each case, a state court's determination "that a guilty plea was proper" is presumed to be correct, unless the transcript of the plea proceeding does

-16-

not adequately demonstrate that it was knowing, voluntary and intelligent. *Garcia v. Johnson*, 991 F.2d 324, 326-327 (6th Cir.1993).

In the context of Petitioner's second assignment of error before them, the Eighth District Court of Appeals addressed Petitioner's assertion that his limited education, in addition to misconceptions at the time of the plea and duress, rendered his guilty pleas invalid. ECF Dkt. #7-18 at 9. The appellate court discussed the validity of the guilty pleas in the context of Petitioner's challenge to the trial court's denial of his oral motion to withdraw his guilty plea made at the time of his sentencing hearing. *Id.* The Ohio appellate court held:

> At the time of the sentencing hearing, Bates made an oral motion to withdraw his plea. Bates argued that he was under duress and misconceptions at the time he entered his guilty plea. He also argues on appeal that he was not fully aware of the consequences of his guilty plea, that he was indecisive with his plea, and that he only has a sixth-grade education. After hearing arguments from counsel and allowing the defendant an opportunity to address the court, the trial court denied the motion. The court indicated that the case had been pending a long time, the court had twice gone through a detailed plea colloquy with Bates, the court had fully complied with Crim.R. 11, Bates understood what he was doing, and two psychological evaluations had been performed and Bates was found competent to stand trial.
>
>     *     *     *
>
> The record reflects that Bates was represented by competent counsel, he was afforded a full Crim.R. 11 hearing, he understood the nature of the charges and possible penalties, and his guilty plea was entered knowingly, voluntarily, and intelligently. The court held a hearing on the motion to withdraw and gave full and fair consideration to the plea withdrawal request. Additionally, the motion to withdraw was made after the cases had been pending for a lengthy time and was made at the time of sentencing.
>
> Our review of the record indicates that the trial court did not abuse its discretion in denying Bates's motion to withdraw his guilty plea. Therefore, we overrule his second assignment of error.

ECF Dkt. #7-18 at 9-10.

The undersigned recommends that the Court find that Petitioner has failed to meet his burden of showing that his plea was involuntary, unintelligent or unknowing and the Ohio appellate court's determination as to this issue is not contrary to or an unreasonable application of federal law. The Ohio appellate court reviewed the trial court transcript of the sentencing where

-17-

counsel for Petitioner indicated Petitioner's desire to retract his guilty pleas.  The trial court allowed the prosecutor and defense counsel, as well as Petitioner, to speak as to the motion to withdraw.  ECF Dkt. #7-13 at 56-60.  Petitioner's counsel merely stated that Petitioner wanted to withdraw his guilty pleas and maintain his innocence because he was "under some duress" and "some misconceptions" at the time, and Petitioner's indecisiveness "is indicative of the fact that he may not have been thinking clearly at the time the plea was entered." *Id.* at 56.  When the trial court asked Petitioner if he wanted to say anything, Petitioner responded that he did not as his counsel "pretty much cleared the air." *Id.* at 58-59.

The trial court denied the motion to withdraw, finding that it had gone over a plea colloquy twice with Petitioner and Petitioner had two psychological evaluations that both indicated that he was competent to stand trial.  ECF Dkt. #7-13 at 60.  The trial court further noted that it had fully complied with Rule 11 of the Ohio Rules of Criminal Procedure, which both counsel agreed was in compliance, and Petitioner understood what he was doing when he entered his guilty pleas.  *Id.*

The transcript of the plea colloquy as detailed above in addressing Petitioner's first ground for relief confirms that Petitioner's pleas were made voluntarily, intelligently and knowingly.  The trial court and the prosecutor both informed Petitioner of the charges to which he was pleading guilty, the penalties that he was facing if he entered such pleas, and the trial court asked whether Petitioner was threatened or otherwise induced into pleading guilty besides anything other than plea negotiations.  ECF Dkt. #7-13 at 43.  Petitioner responded no.  *Id.*  The trial court asked Petitioner whether Plaintiff was able to read, write and understand the English language and Petitioner responded affirmatively.  *Id.* at 42.  The court asked Petitioner whether he was taking any medications and when Petitioner responded that he was prescribed Vistaril and Celexa, the trial court asked him whether those medications had affected his ability to think clearly.  *Id.* at 42-43.  Petitioner responded that they did not.  *Id.*  The trial court presented each charge to which Petitioner was going to plead guilty and informed Petitioner of each of his rights that he was waiving upon his guilty plea.  *Id.* at 42-51.  Petitioner responded that he understood

each of his rights and the charges and penalties that he was facing as a result of pleading guilty. *Id*.  The trial court thereafter separately presented each count to which Petitioner was pleading guilty, isolating each charge and the penalty, and asked him to state his plea as to each one.  *Id*. at 50-51.  Petitioner responded to each charge and penalty that he was pleading guilty.  *Id*.

Based upon the transcript of the plea colloquy, the transcript of the motion to withdraw the guilty pleas, and the Ohio appellate court's decision, the undersigned finds no evidence that Petitioner's limited education or taking of psychotropic medications affected his ability to enter his pleas voluntarily, intelligently or knowingly.  While the trial court could have inquired further into Petitioner's diagnoses and the length of time that Petitioner was taking the medications, the undersigned recommends that the Court find that the trial court's questions were sufficient to find that Petitioner's medications did not affect his ability to plead guilty and nothing in the transcript lend ssupport to a finding that Petitioner's medications or educational level affected the validity of his plea or understanding of the colloquy.  For these reasons, the undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to nor an unreasonable application of United States Supreme Court precedent.

### B. Ground for Relief Number Two

In his second ground for relief, Petitioner asserts that his federal due process rights were violated when the trial court denied his motion to withdraw his guilty plea as he was not informed of critical issues surrounding his plea which caused him to agree to a plea agreement that was not knowingly and intelligently made.  ECF Dkt. #1 at 6.

To the extent that Petitioner argues that the trial court violated state law or state rules of procedure by denying his motion to withdraw his guilty plea pursuant to Rule 32.1 of the Ohio Rules of Criminal Procedure, such a claim is not cognizable in federal habeas corpus because it does not raise constitutional concerns as it is based upon a perceived error of state law.  *Jackson v. Sloane*, No. 1:13CV1326, 2014 WL 4472623, at *12 (N.D. Ohio, Sept. 10, 2014), citing *Weaver v. Moore*, No. 1:06–cv–557, 2008 WL 697705, at *12 (S.D.Ohio March 12, 2008) ("[I]n the absence of a constitutional violation in the taking of the plea, a trial court's abuse of discretion

in denying a subsequent motion to withdraw the plea does not trigger constitutional concerns.").

However, to the extent that Petitioner alleges a violation of federal due process, the undersigned shall address this ground for relief.  Petitioner cites to problems that he allegedly experienced with counsel who assisted him in entering the guilty pleas and his counsel prior thereto who sought to withdraw from his case.  ECF Dkt. #9 at 10-11.  He contends that he could not understand why counsel wanted him to plead guilty when two eyewitnesses allegedly identified other men as the perpetrators of the crimes and neither eyewitness identified Petitioner.  *Id*. at 11.  He also cites to a pro se motion that he filed for a violation of his speedy trial as evidence that he had problems with counsel who assisted him in entering his guilty pleas.  *Id*.

Petitioner also notes "a flurry of activity" on his case, including "a five-day psychological observation of Defendant, and defense motions for discovery, bill of particulars, and two separate motions to suppress."  ECF Dkt. #9 at 11.  He further cites to "the most disturbing section of the docket" which showed that he began a plea colloquy on October 13, 2011 and decided mid-plea to exercise his right to a trial and then had another plea hearing four days later, which he asserts "raises serious questions in the mind of any reasoable[sic[ jurist as to what kind of pressure was upon" him to change his mind.  *Id*. at 12.

None of these factors establish that Petitioner's pleas were not voluntarily, intelligently and knowingly made.  The trial court noted in the hearing on the motion to withdraw his guilty plea that Petitioner had two psychological evaluations and both found him competent to stand trial.  ECF Dkt. #7-13 at 60.  Further, the "flurry of activity" on his case by his counsel suggests that counsel was moving forward with going to trial and not forcing Petitioner to plead guilty.  And the transcript of the plea hearing as quoted above shows that Petitioner's plea was voluntarily, intelligently and knowingly made.  There is no indication by Petitioner at the plea hearing that he did not understand the charges against him or the consequences of pleading guilty.  The trial court and the prosecutor repeatedly informed Petitioner of the charges to which he would be pleading guilty and the penalties that he was facing if he would do so, as well as the rights that he was waiving if he entered guilty pleas.  Petitioner made no mention whatsoever of

-20-

an inability to understand the proceedings and when the trial court specifically asked him throughout the colloquy whether he understood the proceedings, he responded that he did. Further, the transcript fails to show that Petitioner was in any way coerced, threatened or pressured by the court or his counsel into pleading guilty.  Counsel indicated that he had extensive discussions with Petitioner about pleading guilty and it was Petitioner's desire to plead guilty.  For these reasons, the undersigned recommends that the Court find no merit to Petitioner's second ground for relief.

**VI.**   **CONCLUSION AND RECOMMENDATION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant federal habeas corpus petition in its entirety with prejudice.

DATE:  April 14, 2015                                    */s/ George J. Limbert*
                                                                   GEORGE J. LIMBERT
                                                                   UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).